IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PROTECTIVE INDUSTRIES, INC, (d.b.a., CAPLUGS), <br><br>    Plaintiff, <br><br>v. <br><br>RATERMANN MANUFACTURING, INC., GEORGE RATERMANN, PROGRESSIVE PLASTICS, INC., and HENRY BUERMANN, <br><br>    Defendants. | Case No. 3:10-1033 <br> Judge Trauger |

## MEMORANDUM AND ORDER

Pending before the court is the defendants' Motion to Stay Litigation Pending *Inter Partes* Reexamination in the U.S. Patent and Trademark Office (USPTO) (Docket No. 12), to which the plaintiff has responded (Docket No. 24). For the reasons discussed herein, the defendants' motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff ("Caplugs") holds Patent 7,681,587 ("the '587 Patent"), which was issued on March 23, 2010 and "claims a protective sleeve for use on a valve stem of a compressed gas cylinder." (Docket No. 1 at 2.) The plaintiff asserts that its patented protective sleeve has been "adapted by many in the medical gas industry," with 6,000,000 unit sales in its initial year of production in 2007 and sales expected to exceed 16,000,000 in 2010. (*Id.*)

The plaintiff maintains that defendants Ratermann Manufacturing, Inc. (RMI) and George

1

Ratermann (owner of RMI) are "dominant player[s] in the medical gas market" and that, after the introduction of the plaintiff's product, they directed defendants Progressive Plastics, Inc. and Henry Buermann (owner of Progressive) to "promptly manufacture a protective sleeve for sale by RMI . . . that copies Caplugs' patented protected sleeve." (*Id.*)

In a May 19, 2010 letter, counsel for Caplugs advised Progressive's counsel that the '587 Patent had been issued and that Caplugs considered the defendants' competing product infringing. (Docket No. 13 Ex. A.)  On July 9, 2010, Progressive submitted an *inter partes* re-examination request to the USPTO. (Docket No. 1 at 6, 10.)  On September 14, 2010, the USPTO, finding "a substantial new question of patentability," granted Progressive's request for re-examination as to seven of the claims made in the '587 Patent. (Docket No. 13 Ex. B at 5.)  Concurrently, the USPTO mailed an "office action" to the parties, indicating that it was rejecting the seven claims challenged by Progressive as being obvious in light of the prior art. (Docket No. 13 Ex. C at 6.)  Despite the office action, the re-examination process is ongoing and is expected to take a significant amount of time to be fully resolved. (Docket No. 13 at 2.)

On November 2, 2010, the plaintiff filed this case, asserting one count of patent infringement against each of the defendants. (Docket No. 1 at 10-14.)  On November 24, 2010, the defendants filed the pending Motion, which asks the court to stay these proceedings pending resolution of the USPTO's re-examination of the '587 Patent. (Docket No. 12.)  On December 7, 2010, the defendants, in this court, each filed an Answer and Counterclaim that alleged, among other things, that the '587 Patent should be declared unenforceable because it was procured by the fraud of the named inventor, the plaintiff, and the prosecuting attorney. (Docket No. 18 at 14;

Docket No. 19 at 14; Docket No. 20 at 14; Docket No. 21 at 14.)

## ANALYSIS

An *inter partes* re-examination is a proceeding before a USPTO patent examiner in which a third-party asks the examiner to re-examine the validity of a patent in light of the "prior art" existing at the time that the patent was issued; the result of the re-examination is binding on the requester in a subsequent or concurrent legal proceeding. 35 U.S.C. § 311; 35 U.S.C.§ 315. According to USPTO data provided by the defendants, re-examination usually results in the examiner making at least some changes to the patent's claims (42 percent of the time) and, not uncommonly, the examiner will invalidate all of the patent's claims (47 percent of the time). (Docket No. 13 Ex. D.)

It is also not uncommon for one of the parties in a patent infringement suit to ask the court to invoke the court's inherent authority to stay the proceeding to allow the USPTO to conduct the re-examination proceedings. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). Parties seeking a stay generally rely on the notion that allowing the re-examination to proceed without a concurrent court proceeding will reduce costs, narrow the issues for the court surrounding the validity of the patent, and encourage settlements, because the parties will have the benefit of the USPTO's "particular expertise" before returning to court following the end of the stay. *See BarTex Research v. Fedex Corp.*, 611 F. Supp.2d 647, 650 (E.D. Tex. 2009). These savings are perceived as particularly pronounced when the stay is sought at the early stages of a litigation. *Id.*

With these potential benefits in mind, courts primarily consider three factors in assessing

whether to grant a stay: (1) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Lincoln Electric v. Miller Electric Mfg. Co.*, 2007 WL 2670039, *2 (N.D. Ohio Sept. 7, 2007); *Magna Donnelly Corp. v. Pilkington N. Am. Inc.*, 2007 WL 772891, *2(W.D. Mich. Mar. 12, 2007). The parties agree on the applicability of these factors and have briefed each one.

### A. Undue Prejudice

The defendants argue that any delay in conducting the re-examination would not be unduly prejudicial to the plaintiff. (Docket No. 13 at 5.) That is, Congress has directed that such proceedings be conducted with "special dispatch," the USPTO will move as expeditiously as possible, and the plaintiff can take steps to move the process forward, such as "submit[ting] its responses in advance of the deadlines provided by the USPTO." (*Id.* citing 35 U.S.C. § 314(c)). Moreover, the defendants argue, Caplugs requested an extension of time (to December 6, 2010) to respond to the USPTO's "office action" and filed suit knowing that a re-examination proceeding was ongoing, which demonstrates that the plaintiff is not moving expeditiously to resolve the re-examination and that the plaintiff cannot claim any surprise from the request for the stay. (*Id.* at 6.)

The plaintiff argues that the prejudice is apparent. That is, while Congress has directed re-examinations be conducted with "special dispatch," the process is actually quite slow. (Docket No. 24 at 5.) The plaintiff points to USPTO data that shows that the average pendency of a USPTO re-examination is 37.6 months – meaning that this case would be stayed for years. (*Id.*)

4

Given that the infringement has been ongoing for three years already, a stay would, in the plaintiff's view, allow its direct competitor roughly six years of infringement before the plaintiff could even begin to litigate its claims. (*Id.*) Some courts have been more inclined to find undue prejudice resulting from a stay where the party requesting the stay is a "direct competitor" of the patentee. (*Id.* citing, among others, *Tesco Corp. v. Weatherford International*, 2009 WL 529212, *3 (S.D. Tex. Feb. 24, 2009); *Polymer Technolgies v. Bridwell*, 103 F.3d 970, 975-76 (Fed Cir. 1996)).

The plaintiff also points out that the defendants have all alleged that the plaintiff, the prosecuting attorney, and the inventor of the device engaged in fraud in obtaining the '587 Patent. (Docket No. 24 at 6.) The plaintiff argues that it is extremely prejudicial to allow the allegation of fraud to exist in the public record for years on end, without affording the individuals accused a chance to defend themselves. (*Id.* at 7.) Also, during this delay, "crucial evidence" relevant to the fraud allegations and the copying claim "will be lost, memories will have faded, and material witnesses will no longer be available." (*Id.*)

To the court, this factor strongly favors the plaintiff. It is clear from the record that re-examinations are not presently taking place with "special dispatch," and more and more re-examinations are being requested each year. (Docket No. 13 Ex. D.) There is every indication that the stay would last years, permitting the defendants a substantial additional opportunity to sell their, allegedly infringing, product without sanction. Additionally, the plaintiff is correct that it is simply not fair for the plaintiff and associated individuals to be exposed to an allegation of fraud and not given an opportunity to respond for years. The undue prejudice factor plainly

5

favors the plaintiff.

### B. Simplification of the Issues

The defendants maintain that a stay would result in an ultimately much simpler litigation. (Docket No. 13 at 6.) That is, the validity of the '587 Patent will be tested in the re-examination process by a specialized USPTO patent examiner, and, whatever the ultimate finding, judicial economy will benefit through a "streamlined litigation." (*Id.* at 6-7).

That is, if the examiner confirms the '587 Patent without amendment, that result will be binding on Progressive. (*Id.* at 8 citing 35 U.S.C. § 315(c)). In the likely event that a claim is canceled by the re-examination, a stay will save the court the resources of "addressing invalid claims" and directing "protracted litigation regarding [subsequently invalidated] claim language." (*Id.* at 7 citing *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 2010 WL 3239001, *2 (N.D. Ohio Aug. 16, 2010; *Softview Consumer Prods. v. Haworth, Inc.*, 2000 WL 1134471, *2 (S.D.N.Y. Aug. 9, 2000)) Moreover, the defendants suggest that the court "may immediately dismiss the case" if re-examination determines that all claims of the '587 Patent are invalid. (*Id.*) And, no matter the result reached in the re-examination, the "technical expertise provided by the reexamination proceeding" will aid the court and "facilitate the trial" of any remaining claims. (*Id.* at 8.)

In response, the plaintiff argues that, because the re-examination has only been requested by Progressive, the legal estoppel effect of the re-examination only attaches to Progressive. (Docket No. 24 at 9 citing 35 U.S.C. § 301). Therefore, the Ratermann defendants, at the conclusion of the litigation before the USPTO, "may re-assert before this Court the same factual

6

and legal arguments made by [] Progressive before the USPTO," making the re-examination a mere "practice round" for the defendants. (*Id.*) Again, the plaintiff points to compelling case law indicating that, where some defendants in the litigation would not be subject to the estoppel effect of the re-examination, adequate ground exists to deny the motion to stay. *Stormedia Texas LLC v. CompUSA*, 2008 WL 2885814, *1 (E.D. Tex. July 23, 2008)("several defendants who are not party to the reexamination proceeding . . . will [] not be precluded from advancing at trial the same invalidity arguments . . . presented during re-examination. This serves to counteract any simplifying effects of the *inter partes* reexamination proceeding."); *Texas MP3 Technologies Ltd. v. Samsung Electronics Co., Ltd.*, 2007 WL 3219372, *2 (E.D. Tex. Oct. 30, 2007)).

Again this factor favors the plaintiff. If re-examination will not be binding against all of the defendants, it offers insufficient benefit to justify staying this case for years on end.[1] *Network Appliance, Inc. v. Sun Microsystems*, 2008 WL 2168917, *3 (N.D Cal. May 23, 2008) ("there appears to be a growing concern . . . that, on balance, staying a case even in its early stages pending reexamination has not led to the just, speedy, and efficient management of the litigation.")

## C. Stage of Litigation

The defendants argue that this case "has barely begun" and that the request for re-examination was sought promptly after the allegation that the defendants were infringing on the

---

[1]The plaintiff also argues that, while "the dispute might end" if all claims were invalidated, there is a strong probability that at least some claims will survive. (Docket No. 24 at 6.) Under this scenario, because the re-examination will focus on the prior art and not the fraud allegations,"the parties will be back in court to litigate the []claims that the patent should not be enforced because of inequitable conduct." (*Id.*)

7

patent. (*Id.* at 8-9.) They point to a series of cases in which the court found that a party's promptness in seeking re-examination weighed in favor of the stay. (*Id.* citing e.g. *Magna Donnelly*, 2007 WL 772891, at *4; *Roblor Mktg. Group Inc. v. GPS Industries, Inc.*, 633 F. Supp. 2d 1341, 1347 (S.D. Fla. 2008)). The plaintiff argues that, in light of the delays in the re-examination process, "the Court will dispose of this case well before the time when the re-examination reaches 'final disposition'" and, therefore, the stage of litigation factor should not weigh heavily in the calculus. (Docket No. 24 at 12.)

The court agrees. While this factor facially favors the defendants, given the court's findings on the other two factors, there has been an insufficient showing that staying this case, even in its earliest stages, would result in efficiencies for the parties or the court.[2] Therefore, the defendants' Motion to Stay Litigation Pending *Inter Partes* Reexamination in the U.S. Patent and Trademark Office (USPTO) (Docket No. 12) is **DENIED**.

---

[2]On December 21, 2010, the defendants sought leave to file a reply brief (Docket No. 26), which the court has reviewed (Docket No. 26 Ex. 1). The defendants argue primarily that, in its recently filed response to the "office action," the plaintiff proposed modifications to some of the claims in the '587 Patent and made arguments challenging the USPTO's assertions of obviousness. (Docket No. 26 Ex. 1 at 2-3.) In light of this, the defendants again urge the court to allow the USPTO process to run its course and then, down the road, benefit from the USPTO's guidance. (*Id.*) The defendants also stress that the plaintiff will, at the end of the litigation, be able to recover for any infringement – whenever it occurred – and that plaintiff's concerns about the opportunity to defend the fraud allegations, the potential delay, and loss of evidence are all overstated or exaggerated. (*Id.* at 5-7.) There appears to be no dispute that the delay from any stay will be significant and, to the court, any suggestion about how the plaintiff's patent claims will look after the re-examination is purely speculative. In light of this, the fairest course, for now, is to proceed onward with this litigation. The court is not suggesting that a stay might never be appropriate in this case, and the court notes that the Initial Case Management Conference is not until March 7, 2011. Perhaps by that time it will be clearer how expeditiously the re-examination process is moving.

It is so ordered.

Enter this 22nd day of December 2010.

ALETA A. TRAUGER  
United States District Judge