UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PROTECTIVE INDUSTRIES, INC., (d.b.a. CAPLUGS), | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:10-01033 ) Judge Sharp |
| RATERMANN MANUFACTURING, INC., GEORGE RATERMANN, PROGRESSIVE PLASTICS, INC. and HENRY BUERMANN, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM ON CLAIM CONSTRUCTION

There are numerous pending motions in this patent infringement case in which Plaintiff Protective Industries Inc., d.b.a. Caplugs, ("Plaintiff" or "Caplugs") claims that Defendants Ratermann Manufacturing, Inc. ("RMI"), George Ratermann ("Ratermann"), Progressive Plastics, Inc. ("Progressive") and Henry Buermann ("Buermann") (collectively "Defendants") have infringed and continue to infringe on United States Patent No. 7,681,587 ("the '587 patent"). Those motions – ranging from summary judgment motions to motions in limine – have been fully briefed by the parties.

### I. BACKGROUND

This Court has previously addressed the patent at issue in a 21-page claim construction opinion, (Docket No. 126; Progressive Indus. Inc. v. Ratermann Manuf., 2012 WL 1598042 (M.D. Tenn. May 7, 2012), basic familiarity with which is assumed. Nevertheless, and to provide context to the motions, the Court provides the following general background. This background will be

3

expanded upon where necessary for purposes of a specific motion.

Invented by Frederick Zeyfang ("Zeyfang"), the '587 patent is a GAS BOTTLE VALVE STEM PROTECTIVE SLEEVE for use as a protective device on the valve stem of a compressed gas cylinder and, in particular, the three-holed CGA-870 valve used on medical oxygen gas cylinders. Because oxygen bottles are shipped and stored after filling, it is desirable that the valve, and particularly the orifice through which the oxygen passes, be protected. It is also desirable that any such protective device be easy to install and easy to remove because oxygen cylinders are filled in large quantities in gas filling plants, and the end users are often elderly or infirm.

Plaintiff's protective sleeve is a four-sided plastic sleeve which slides over the top of the valve stem and is configured to fit snugly around the valve. Inside the sleeve is a prong that snaps into the gas outlet hole when placed over the valve, thereby securing the sleeve to the valve. The end user removes the sleeve by pulling on a tab, which tears a piece of the plastic from one side.

Plaintiff's protective sleeve is not the only invention directed towards protecting valves on gas cylinders during transportation and storage. Devices have included not only pull-over sleeves (like Caplugs'), but also cellulose wet bands, wrap around sleeves, plugs, and shrink wrap.

One of the earliest protective sleeve devices was invented by Lynn Davis in 1960 and granted U.S. Patent Number 3,125,242 (the "Davis '242 patent). This sleeve is four-sided, slides over the valve, locks into place by way of a projection that fits into the gas outlet hole, and includes a tear strip for ease of removal. For many years, Defendant Progressive manufactured the Davis sleeve which was then sold to end users and distributors, such as Defendant RMI. Over time Progressive refined that sleeve.

In 2006, Defendant Buermann added flanges to the side of the sleeve, which was patented

4

under Design Patent Number D612,012. The next year, Buermann filed a patent application for further refinements to the Davis sleeve, including flanges.

Caplugs filed its application for patent on September 15, 2006, and began selling its protective sleeve in February 2007. Shortly thereafter, according to Caplugs, "RMI introduced a competing product which copied the patented features of Caplug's product," and which "were specifically designed and manufactured by Progressive and Buermann for sale by RMI in the United States in direct competition with Caplugs to meet the competitive advantage of Caplug's protective sleeve." (Docket No. 1, Complaint ¶¶ 29 & 31). The allegedly infringing competing product was the refined Davis protective sleeve that matured into Patent D612,013, the application for which was not filed until some eight months after Caplugs began marketing its protective sleeve. (Id. ¶ 36).

Caplugs wrote Defendants, informing them that the '587 Patent had been issued, and suggesting that their protective sleeve infringed on Caplugs' patent. Defendants responded by indicating that a request for reexamination of the '587 Patent had been filed, and that they would not take any action until the reexamination proceedings had been concluded.

On November 2, 2010, Caplugs filed suit in this Court asserting patent infringement against each of the Defendants. In response, Defendants filed Answers and Counterclaims, denying infringement, and claiming that the '587 patent was invalid and unenforceable because Plaintiff intentionally failed to disclose to the Examiner prior art and other information material to the patentability of the invention.

On January 13, 2012, the Court held a <u>Markman</u> hearing on the disputed terms and phrases for the '587 patent. Subsequently, the Court construed the claims as follows:

| TERMS AND PHRASES | COURT'S CONSTRUCTION |
|---|---|
| "elongated" | no construction necessary but, if construed, "longer than it is wide" |
| "portion of the length" | no construction necessary but, if construed, "part of the length" |
| "said sides of said unitary body configured to conform to adjacent phrases of said valve stem" | "said sides of said unitary body having a shape substantially the same shape of adjacent faces of said valve stem" |
| "protective relationship thereto" | "to cover" |
| "along a plane transverse to said longitudinal axis" | "along a plane that extends across the longitudinal axis" |
| "orifice" | no construction necessary but, if construed, "a hole" |
| "flange" | "a rim or an edge" |

Progressive Indus. Inc., 2012 WL 1598042 at *11.

With this general background, the Court turns to the pending motions.

## II. MOTIONS FOR SUMMARY JUDGMENT

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In this case, the parties have filed cross-motions for summary judgment on the issue of

6

infringement. Additionally, Defendants hav moved for summary judgment on the issue of willful infringement, while Plaintiff seeks summary judgment on Defendants' claim of inequitable conduct.

**A. Motions for Summary Judgment on Issue of Actual Infringement, Under Doctrine of Equivalents, and Willful Infringement**

### 1. *Actual Infringement*

"Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." Novartis Corp. v. Ben Venue Lab., Inc. 271 F.3d 1043, 1046 (Fed. Cir. 2001). "Summary judgment of noninfringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." Id.

In this case, the parties' respective motions for summary judgment hinge to a great extent on this Court's construction of the phrase "said sides of said unitary body configured to conform to adjacent phrases of said valve stem," and to a somewhat lesser extent on the construction of the phrase "protective relationship thereto" which are adjacent phrases from Claim 1 of the '587. Defendants' motion is premised upon what they characterize as "five indisputable facts":

> 1. The Court has held that the claims of the '587 patent are limited to 'a sleeve which covers and takes the shape of the valve faces.'
>
> 2. The Accused Devices are designed for a CGA-870 valve.
>
> 3. The faces of a CGA-870 valve have an arched top.
>
> 4. The sides of the Accused Devices do not have an arched top.

7

5. The Accused Devices are not tall enough to cover the faces of a CGA- 870 valve.

(Docket No. 133 at 2, citation to Claim Construction ruling omitted).

In response, Plaintiff argues that (1) while the parties agree that the general shape of the valve faces is a rectangular plane with a curved top, Defendants incorrectly assume "that all CG870 valves are identical in size and dimension"; (2) "the Accused devices do have *substantially* the same shape as adjacent faces," including "the areas where coverage is necessary, *i.e.*, the locations of the gas orifice and the pin index holes"; (3) "while the Accused Devices fit only on a CGA 870 valve due to the positioning of the index pins on the Accused Device, the '587 Patent is not directed to a device that fits only [that] valve"; (4) the "proper reading" of the term "in protective relationship thereto" requires "an infringing device to cover as much of the valve faces as is required to be 'substantially the same shape'"; and (5) nowhere did the Court "require[] that an infringing device cover the entire valve face." (Docket No. 147 at 3-7). Additionally, in support of its own motion claiming the accused devices do, in fact, infringe, Plaintiff argues the foregoing points and, also that "[t]he parties acknowledge that the shape of the valve faces is, for most of the valve face, a flat, planar rectangular shape" that "changes at the very top of the valve face to have a curved top," but because the "Accused Devices have the same shape as the vast majority of the valve faces, mainly a rectangular planar shape" the devices are "substantially the same shape, as required by the claim construction." (Docket No. 152 at 7).

To place the parties' arguments and this Court's claim construction in context, it is helpful to show what typical embodiments of the '587 Patent and the accused devices look like. Figure 1 of the patent shows the sleeve "installed in protective position over a gas valve of a gas bottle":

8



('587 Patent, Fig. 1 & Col. 1, ln. ln.63-65). Embodiments of the accused device are shown below, also in protective position over a gas valve stem:




(Docket No. 152 at 9).

Caplugs' argument that the accused devices infringe on the '587 Patent ignores the import of this Court's claim construction ruling by entirely divorcing the rationale underlying the construction from the actual construction. During claim construction, Plaintiff argued that "if any construction of this phrase is needed, the proper definition is 'the sides of the device, which extend at least a part of the length of the valve stem, are designed to be of similar shape to the parts of the sides of the valve stem which the sides cover.'" For their part, Defendants, believing that the device

9

must cover the valve faces, proposed as a definition, "said sides of said unitary body having a shape substantially the same shape of adjacent faces of said valve stem[.]" Defendants supported their position with the following illustration:



In the claim construction ruling, the Court acknowledged those arguments, and observed that "[u]nder Defendants' construction, therefore, the shape and size of the device mirror the shape and sides of the valve faces, to wit the rectangular-shaped, arch-topped flat portions of the valve." Protective Industries, Inc., 2012 WL 1598042 at *7. The Court then wrote:

> Having considered the evidence in the record and the arguments of the parties, the Court agrees with Defendants that Claim 1 describes a sleeve which covers and takes the shape of the valve faces. Several factors lead to that conclusion.
>
> First, and most importantly, the claim language itself states that the sides of the protective sleeve are "configured to conform to adjacent faces of said valve stem" and, in so doing, serve in a "protective relationship thereto." The claim language does not state that the sides of the protective sleeve are configured to conform to a portion or a part of the adjacent faces. The fact that this language is prefaced with language which states that the protective sleeve must be of "such length as to extend along at least a portion of the length" of the valve stem does not change this conclusion because a protective sleeve which covers the faces necessarily extends along at least a portion of the valve stem.
>
> Second, and related to the last point, the prosecution history supports this construction. Claim 1 was amended to overcome the PTO Examiner's rejection of the claim in view of the Darley patent which teaches a tamper proof seal that wraps around a valve cylinder. While Plaintiff insists that Darley was distinguishable on the basis that it was a wrap around (as opposed to a slide over) sleeve, the inventor's response to the Examiner's observation went much further than merely making that distinction:

10

> ... [C]laim 1 is amended to state that the claimed protective sleeve is comprised of an open-ended elongated four-sided unitary body of such length as to extend along at least a portion of the length of said valve stem in protective relationship thereto when said protective sleeve is placed over said valve stem. By contrast, the sealing arrangement of the reference comprises a body capable of being wrapped around a valve of a gas cylinder, and secured thereto by means of a strap [with] tooth-shaped projections which are inserted into locking holes.
>
> (Docket No. 68–10 at 7, references to numbers in Darley patent omitted). If the Darley patent was readily distinguishable based solely up the fact that it was a wrap-around sleeve, Plaintiff's response could have ended with the addition of language about its device being "an open-ended elongated four-sided unitary body."
>
> Third, all of the drawings in the '587 patent support the construction of a protective device which takes the shape of, and covers, the valve faces. Patent drawings can be "highly relevant in construing" the claims of a patent, CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1153 (Fed. Cir. 1997). While it is true that "drawings in a patent need not illustrate the full scope of the invention," Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 632 F.3d 1245, [1255] (Fed. Cir. 2011), and "patent coverage is not necessarily limited to those inventions that look like the ones in the figures," MBO Lab., Inc. v. Becton, Dickinson & Co., 474 F.3d 1324, 1333 (Fed. Cir. 2007), it is significant that Figures 1 and 2 show the protective sleeve, and Figures 2B, 3, and 4 are said to be different embodiments of the sleeve, yet each and every embodiment depicted shows a sleeve which is designed to cover the valve faces and is made to conform to the shape of the faces on a CGA–870 valve. It is also significant that prior art in the form of the Davis and Moss Plastic sleeves show a device which slides over the valve stem but when put in place does not cover the valve faces.

Id. at **7-8.

Sometimes, a picture (or illustration) is worth a thousand words, and so it is in this case. As portrayed above, the typical embodiments of the accused devices are not "configured to conform to adjacent faces of said valve stem" in "protective relation thereto" as this Court has construed those terms. The Court ruled "that Claim 1 describes a sleeve which covers and takes the shape of the valve faces," faces which are rectangular with an arched top. In terms of the precise claim

11

construction language, a four-sided rectangular shaped sleeve with no arched top does not have "a shape substantially the same shape of adjacent faces of said valve stem," particularly when the device must serve in "protective relation thereto", which the Court construed to mean "to cover."

In arriving at the conclusion that Defendants are entitled to summary judgment on the allegations of actual infringement, the Court has thoroughly considered Caplugs' arguments but finds them unpersuasive. For example, Caplugs argues that the valve stem sizes vary even in CGA 870 oxygen valves, and, moreover, the invention covered by the '587 Patent could be used on other valve types.

However, even if there are some variation in the sizes of the CGA 870 oxygen valve, the parties agree that they are uniformly rectangular with a curved top. This Court's claim construction was (and is) that the protective sleeve must be substantially the same shape as the entire fact, not just the rectangular portion, whatever its size. CGA 870 oxygen valves are essentially bell-shaped, and the accused products with rectangular sides are not.

Caplugs' assertion that the '587 Patent is not limited to devices that fit CGA-870 valves is, as Defendants point out, a red herring. Even accepting that to be true, the question is whether the accused devices infringe, and the only evidence before the Court is that the accused devices are used solely on the CGA-870 with bell-shaped faces.

The Court need go no further on the issue of actual infringement because "[t]o prove literal infringement, a plaintiff must show that the accused device contains each and every limitation of the asserted claims." Presidio Components, Inc. v. Amer. Tech. Ceramics Corp., ___ F.3d ___, ___, 2012 WL 6062786 at *4 (Fed. Cir. Dec. 19, 2012). "'If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.'" Id. (quoting, Bayer AG v. Elan

12

Pharm. Research Corp., 212 F.3d 1241, 1247 (Fed. Cir. 2000).

Here, the '587 Patent has seven claims: Claim 1 is an independent claim and claims 2-7 are dependent claims. Since Claim 1 requires that the sleeve be "configured to conform to adjacent faces of said valve stem in protective relationship thereto," and the accused devices do not meet this requirement, there is no infringement because the remaining claims depend from Claim 1.

### 2. *Infringement Under the Doctrine of Equivalents*

"'Under the doctrine of equivalents, 'a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.'" SanDisk Corp. v. Kingston Tech. Co., 659 F.3d 1348, 1363 (Fed. Cir. 2012) (quoting, Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997)). The doctrine seeks to prevent "[u]nimportant and insubstantial substitutes for certain elements" from defeating the patent and destroying the patent's value "by simple acts of copying." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 731 (2002).

Defendants move for summary judgment on Caplugs' claims of infringement under the doctrine of equivalents based upon both the specific exclusion principle and prosecution history estoppel. Because the Court is persuaded by the former argument, it does not consider the latter.

The specific exclusion "principle limits what can be claimed under the doctrine of equivalents by mandating that 'the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.'" Abbott Lab. v. Andrx Pharm., Inc., 473 F.3d 1196, 1211 (Fed. Cir. 2007) (quoting, Athletic Alternatives, Inc. v. Prince Mfg. Inc., 73 F.3d 1573, 1582 (Fed. Cir. 1996)). This is a "corollary to the 'all limitations' rule," whereby, for example, "if

13

a patent states that the claimed device must be 'nonmetallic,' the patentee cannot assert the patent against a metallic device on the ground that a metallic device is equivalent to a non-metallic device." Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1309 (Fed. Cir. 2007) (citations omitted). Likewise, "'an unmounted computer . . . cannot be equivalent to a mounted one,'" because, "[t]o hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent." Asyst Tech. Inc. v. Emtrak, Inc., 402 F.3d 1188, 1194 (Fed. Cir. 2005).

In this case, the Court has construed "in protective relation thereto" as meaning "to cover," not "to cover a part of," or, as Caplugs suggests, "to cover substantially." A device that does not cover the valve faces is not an equivalent to a device that does cover the faces, and to say that "not covered" is equivalent to "covered" would be to remove the "in protective relationship thereto" limitation out of Claim 1. See, Moore U.S.A. Inc. v. Standard Register Co., 229 F.3d 1092, 1115 n.5 (Fed. Cir. 2000) ("The presence of a feature in an accused device (here, adhesive) cannot possibly be equivalent to the claimed absence of that feature, and no reasonable factfinder could conclude otherwise.").

### 3. *Willful Infringement*

In In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007) ( en banc ), the United States Court of Appeals for the Federal Circuit held that to establish willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and that, once this "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." Id. at 1371). Caplugs does not come close to meeting this high standard (the

14

first of part of which was recently held to be a question of law for the trial court, Bard v. Perifpheral Vascular, Inc. v. W.L. Gore & Assoc. Inc., 682 F.3d 1003, 1005 (Fed. Cir. 2012)) and, in any event, the finding of no infringement necessarily precludes a claim of willful infringement and the prospects of enhanced damages.[1] See, Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1310 (Fed. Cir. 2011) ("If the accused infringer's position is susceptible to a reasonable conclusion of no infringement, the first prong of Seagate cannot be met.").

**B. Motion for Summary Judgment on the Issue of Inequitable Conduct**

As previously indicated, after this case was filed, Defendants filed counterclaims alleging that the '587 patent was invalid and unenforceable because Plaintiff intentionally failed to disclose to the Examiner prior art and other information material to the patentability of the invention. Specifically, Defendants alleged that Caplugs attempted to deceive the patent office "into thinking that the claimed subject matter was novel, non-obvious and patentable," by (1) submitting a "misleading and materially incomplete English language abstract" of French patent 2 878 678, and (2) failing to submit a Written Opinion of the World International Property Organization ("WIPO") in a related international application that was denied. (Docket No. 20 Counterclaims ¶¶ 12-28 & 44-48). Caplugs has moved for summary judgment on those assertions.

In response, Defendants spend little time discussing the Written Opinion, and no time arguing about the French patent, focusing instead on the contention that Caplugs failed to disclose

---

[1] On the issue of damages, Defendants have moved for partial summary judgment which would bar damages prior to March 23, 2010 (the date of issuance of the '587 Patent), because the invention claimed in the patent is not substantially identical to the invention claimed in the patent application, and, therefore, there is no provisional right to damages pursuant to 35 U.S.C. § 154(d). Leaving aside that this motion is effectively mooted by this Court's finding of non-infringement, Caplugs does not oppose the motion and it will be granted.

15

specific information about the Alliance Sleeve[2] to the patent office, and inventor Zeyfang allegedly "engaged in egregious misconduct by filing an unmistakable false affidavit" (Docket No. 186 at 16) to the patent office. However, the claims about the Alliance Sleeve and Zeyfang's alleged misrepresentations were not specifically pled until this Court recently allowed Defendants to file an Amended Answer and Counterclaims. Thus, while those assertions may very well be the subject of a later motion for summary judgment, they are not the subject of the presently pending motion.

As for the Written Opinion and the French patent allegations, Caplugs has provided the opinion of an expert witness, Stephen G. Kunin, a patent lawyer who was employed as Deputy Commissioner for Patent Examination Policy in the patent office for ten years. He opines that Caplugs complied with its duty to disclose, that the English language Abstract obtained from the European Patent Office is presumptively accurate on its face, that Caplugs was not required to submit a full translation of the French language patent instead of an English language abstract of the same, and that applicants are generally not required to disclose search reports or written opinions arising from foreign prosecutions.

It may be (as Defendants contend in one of their numerous motions in limine) that "[a]llowing so-called 'expert' patent lawyer opinions into evidence will not be helpful to the trier of fact." (Docket No. 225 at 2). But "[t]he party seeking to render a patent unenforceable due to inequitable conduct must prove both materiality and intent by clear and convincing evidence." Golden Hour Data Sys. Inc. v. emsCharts, inc., 614 F.3d 1367, 1373 (Fed. Cir. 2010). Even though Defendants are not required to prove their claims of inequitable conduct at this juncture, "to survive summary judgment, [they are] required to introduce evidence from which a trier of fact could find

---

[2] The Alliance Sleeve is a protective sleeve manufactured by Alliance Plastics some six years prior to the filing of the application for the '587 patent.

16

materiality and intent by clear and convincing evidence." Abbot Lab. v. TorPharm, Inc., 300 F.3d 1457, 1379 (Fed. Cir. 2002). Defendants have pointed to no evidence which supports a finding of either materiality or intent as to the Written Opinion or French patent application.

Further, in acknowledging Caplugs' assertion that the Written Opinion was not material because the examiner did not find it to be material on reexamination, Defendants merely argue that this Court is not bound by the patent office's findings. Again, that may be so, but Defendants must offer some basis for rejecting those findings. Indeed, in the very case upon which Defendants rely, Kathrein-Werke KG v. Radiaion y Microondas S.A., 2011 WL 4460393 at *11 (N.D. Ill. 2011 Sept. 16, 2011), the court found summary judgment inappropriate on whether engineering drawings were prior art because defendant's expert's "testimony raises an issue of fact as to the materiality of the drawings." Elsewhere, that same court observed that "[t]he materiality to establish inequitable conduct is but-for materiality," id. at *8, but present Defendants point to nothing which would suggest that the '587 patent would not have issued "but for" the failure to provide the examiner with an "accurate" abstract and the written opinion.

### III. **MOTIONS TO DISMISS**

The individual Defendants, George Ratermann and Henry Buermann, have filed Motions to Dismiss for lack of personal jurisdiction. While those motion would appear to be mooted by this Court's rulings above on the issue of infringement, the Court addresses them because of the possibility of appeal, and consequently, the individual Defendants continued participation in this litigation.

In respective declarations, Ratermann and Buermann assert they (1) are not residents of Tennessee (Ratermann resides in California, Buermann in Vermont); (2) do not own or rent any real

17

or personal property in the State of Tennessee; (3) do not maintain a Tennessee address, telephone number, bank account or registered agent; (4) have no personal regular business dealings in Tennessee[3]; (5) are not personally licensed or registered to do business in Tennessee, and have not personally sold any goods or advertised any services in the State of Tennessee or to residents of Tennessee; and (6) their respective companies (RMI and Progressive) observe corporate formalities.

In response, Caplugs does not challenge any of those statements, let alone provide any evidence that would suggest that the individual Defendants have sufficient minimum contact with Tennessee such that retaining jurisdiction over them would not offend the "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Rather, Caplugs argues that the individual Defendants have waived their personal jurisdiction argument, relying upon Sixth Circuit law. Specifically, Caplugs relies upon Gerber v. Riordan, 649 F.3d 514, 518 (6th Cir. 2011) for the proposition that personal jurisdiction "can be waived either explicitly or implicitly," and that "an individual may submit to the jurisdiction of the court by appearance." Caplugs argues the individual Defendants have waived their personal jurisdiction defense because they have filed multiple motions, participated in discovery, asked the Court for various forms of relief, and are represented by attorneys who entered general appearances on behalf of all Defendants in this case.

Contrary to Caplugs' position, "[t]he law of the Federal Circuit, rather than that of the regional circuit in which the case arose, applies to determine whether the district court properly declined to exercise personal jurisdiction over an out-of-state accused infringer." Nuance

---

[3] Ratermann also alleges that the only regular business he has in Tennessee is with employees of RMI, and that he travels to Tennessee once every 18 months for business purposes that are usually related to employment issues.

18

Communications, Inc. v. Abbyy Software House, 626 F.3d 1222, 1230 (Fed. Cir. 2010); accord, Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1292 (Fed. Cir. 2012) ("We review a district court's exercise of personal jurisdiction over an accused infringer without deference, applying Federal Circuit law rather than the law of the regional circuit."). In Rates Tech. Inv. v. Nortel Networks Corp., 399 F.3d 1302, 1307 (Fed. Cir. 2005), the Federal Circuit quoted Fed. R. Civ. P. 12(b)(1) for the proposition that "[a] defense of lack of jurisdiction over the person . . . is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course" and that the rule "'advises a litigant to exercise great diligence in challenging personal jurisdiction, venue or service of process.'" Id. at 1307 (citations omitted). The Federal Circuit also held that "these defenses must be raised 'at the time the first significant defensive move is made-whether it be by way of a Rule 12 motion or in a responsive pleading,'" and also that "filing a counterclaim, compulsory or permissive, cannot waive a party's objections to personal jurisdiction, so long as the requirements of Rule 12(h)(1) are satisfied." Id. (citation omitted).

In this case, the individual Defendants have complied with the requirement of Rule 12(h)(1). They each filed individual answers in which they challenged the assertion of personal jurisdiction and raised that as an affirmative defense. They did the same in their Amended Answers. Additionally, both raised the issue of personal jurisdiction in the proposed case management orders, and those assertions were recognized in the Case Management Order (Docket No. 33) issued by Judge Trauger. Further, while they joined in Motions filed by the corporate Defendants, they did not file any individual motions.

Because the individual Defendants have not waived their personal jurisdiction defense, it is

19

incumbent upon Caplugs to establish that jurisdiction exists.  See, Grober v. Mako Prod. Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citation omitted) ("plaintiff has the burden of proving" that "'the defendant purposefully directed its activities at residents of the forum state'" and "'(2) claim arises out of or relates to the defendant's activity in the forum state'").  While a plaintiff may rest upon the pleadings when discovery has not been had, Nuance Comm., 636 F.3d at 1231, discovery in this case is now closed, except as to the new issues raised by the amended counterclaims.  Because Caplugs has failed to show that the individual Defendants had sufficient minimum contacts with Tennessee such that personal jurisdiction is appropriate, their Motions to Dismiss will be granted.

## IV. **MOTIONS IN LIMINE**

The parties filed a slew of Motions in Limine in anticipation of the jury trial in this case on the question of infringement, and before the Court indicated that it would hold a bench trial on the question of inequitable conduct before that jury trial.[4]  In light of the foregoing rulings which markedly streamline this case and leave only the issue of inequitable conduct to be tried, the Court will deny all of the Motions in Limine.  Said denial will be without prejudice to refiling appropriate Motions in Limine relating to the allegations of inequitable conduct.

## V. **CONCLUSION**

On the basis of the foregoing, the Court will (1) grant Defendants' Motions for Partial Summary Judgment on the issues of actual infringement, infringement under the doctrine of equivalents, and willful infringement; (2) deny Plaintiff's Motion for Partial Summary Judgment on Infringement; (3) grant Defendants' Motion for Partial Summary Judgment of no Provisional Right;

---

[4] In relation to the trial, Caplugs has filed a motion requesting that the Court not invoke the written narrative requirement of Local Rule 39.01(c)(6)(c).  That request will be granted, particularly since the claims of inequitable conduct will be tried to the Court.  However, any questioning of an expert may not be used to elicit opinion testimony that strays from the confines of the expert's report.

20

(4) grant Plaintiff's Motion for Partial Summary Judgment on the Issue of Inequitable Conduct as to the allegations relating to the Written Opinion of the WIPO and the French patent; (5) grant the Motions to Dismiss for Lack of Personal Jurisdiction filed by the individual Defendants; (6) deny Defendants' Motion for Hearing; (7) grant Plaintiff's Motion not to Invoke the Option for Narrative Expert Testimony; (8) deny the parties' pending Motions in Limine; and (9) deny as moot Defendants' Motion for Leave to File a Reply relating to the Motion to Amend Answers and Counterclaims.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE